IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 17, 2020

## JOSHUA MICHAEL STEWART v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 114109     Steven W. Sword, Judge**

_____

## No. E2020-00150-CCA-R3-PC

_____

The petitioner, Joshua Michael Stewart, appeals the denial of his petition for post-conviction relief, which petition challenged his 2017 Knox County Criminal Court jury convictions of rape of a child and aggravated sexual battery. He argues that he was deprived of the effective assistance of counsel. Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Joshua Michael Stewart.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ashley McDermott, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In January 2017, a Knox County Criminal Court Jury convicted the petitioner of one count of rape of a child and two counts of aggravated sexual battery for offenses committed against his stepsister, and the trial court imposed a total effective sentence of 33 years' incarceration. This court summarized the evidence of the petitioner's guilt:

> The record reflects, in the light most favorable to the State, that the victim's date of birth was December 12, 2000, and that she was age eight or nine when she and her family moved to the Jacksboro Pike home. The victim testified that at this home, the [petitioner] visited and stayed overnight periodically, although he lived at another residence with his

then-wife and children. The victim recalled one night on which everyone was asleep. She said that she awoke during the night and went into the living room. She said that the [petitioner] "came in there" and watched television with her. She said that the [petitioner] placed his hands "through her clothes," that he touched her vagina inside her underwear, and that he placed his finger inside her vagina. She did not recall what was airing on television but said that she "was leaned up against him" on the couch and that they were "kind of half laying [sic] down, kind of propped up type state." . . .

. . . .

In the light most favorable to the State, the record reflects that the victim testified about the [petitioner's] touching her at the Jacksboro Pike home before the incident involving penetration. The victim testified that she recalled when the [petitioner] touched her vagina "over [her] clothes" and said it felt "weird." She said that this was a separate incident in which the [petitioner] inserted his finger into her vagina. She also stated that all of the incidents at the Jacksboro home occurred on the living room couch. . . .

*State v. Joshua Michael Stewart*, No. E2017-00864-CCA-R3-CD, slip op. at 8-9 (Tenn. Crim. App., Knoxville, Jan. 4, 2018), *perm. app. denied* (Tenn. Mar. 14, 2018).

The petitioner filed a timely petition for post-conviction relief on October 22, 2018, alleging, among other things, that his trial counsel performed deficiently by failing to locate and/or interview certain witnesses.

At the November 7, 2019 evidentiary hearing, the petitioner testified that he met with trial counsel "[h]alf a dozen" times before the trial and that they discussed potential witnesses. The petitioner said that he told counsel that his daughter, Loxzanna Stewart, "was there with me at multiple occasions that these things were supposed to have been happening." He claimed that Ms. Stewart often slept in the same bed with the victim and that she was a "[l]ight sleeper." The petitioner added that Ms. Stewart could have testified that the victim was "known to make up stories."

During cross-examination, the petitioner testified that Ms. Stewart would have been 12 years old at the time of his trial and that his "wife's cousin Tony had custody

-2-

of her at the time." He said that when he mentioned Ms. Stewart as a potential witness, trial counsel "stated that she was underage and that, you know, we would see."

The petitioner's 17-year-old daughter, Loxzanna Stewart, testified that the victim was Ms. Stewart's "grandfather's stepdaughter, and I lived in their house for a number of years." She said that she was "about seven or so" at the time of the alleged offenses and that the victim was "about a year older than me." Ms. Stewart said that she was "not completely aware" of the victim's reputation for truthfulness "because we were children" but that "I would believe that she did make things up." Ms. Stewart clarified that she had never been around when the victim made things up, but she added that the victim "did say that she had like imaginary friends or just normal children things." She said that, during the relevant time period, she and the victim shared a queen-sized bed and that she "was a light sleeper, yes." Ms. Stewart testified that she thought she would have awoken had the defendant entered the bedroom and assaulted the victim.

During cross-examination, Ms. Stewart testified that she was 15 years old at the time of the petitioner's trial and that she was living with an aunt at that time. She said that when they were both younger, the victim would make up stories and that she had an imaginary friend, but she agreed that the victim's behavior was typical for a child of that age. Ms. Stewart insisted that the defendant could not have entered the bedroom she sometimes shared with the victim without waking Ms. Stewart because "I believe that I am a light sleeper."

Trial counsel testified that he represented the petitioner for approximately one year before the trial and that he had conducted four or five jury trials in serious felony cases before being appointed to the petitioner's case. Counsel said that he retained the services of an investigator to help him locate witnesses. He recalled that in the petitioner's case, some of the witnesses were minors "that we could not get access to." He added that although he "was open to talking to anybody that showed up" on the day of trial, "as a matter of strategy, I hesitate to put anybody on the stand that I don't know what they're gonna say." Counsel said that his investigator "was turned away" when he tried to contact Ms. Stewart and that "none of [the petitioner's] family was cooperative with . . . his defense."

During cross-examination, trial counsel reiterated that neither he nor his investigator interviewed Ms. Stewart prior to trial because "[t]he family was not cooperative with us." He acknowledged that he did not subpoena Ms. Stewart, saying, "I would have never served her with a subpoena to testify without knowing what she would say."

At the conclusion of the hearing, the post-conviction court took the petition under advisement. In its written order denying post-conviction relief, the post-conviction court accredited trial counsel's testimony "that the petitioner's family were not cooperative during the investigation" and that the family's refusal to cooperate "could have certainly prevented the attorney and investigator for the petitioner from interviewing Ms. Stewart." The court deemed trial counsel's decision not to call Ms. Stewart as a witness at trial "a reasonable strategic decision" given that Ms. Stewart's family prevented his interviewing her prior to trial. The post-conviction court found that Ms. Stewart's testimony was not "convincing," noting specifically that Ms. Stewart "offered no admissible testimony regarding the character for truthfulness of the victim" and that "[h]er testimony about being a light sleeper would not have added much to the proof already elicited."

In this appeal, the petitioner reiterates his claim that trial counsel performed deficiently by failing to interview Ms. Stewart prior to trial and present her as a witness at trial and that, but for counsel's deficient performance, the result of the proceeding would have been different. The State contends that the petitioner is not entitled to post-conviction relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to

-4-

relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record supports the denial of post-conviction relief. Trial counsel's accredited testimony established that he attempted to interview Ms. Stewart prior to trial but that her family's refusal to cooperate thwarted his efforts. Because trial counsel was not permitted to interview Ms. Stewart prior to trial, his decision not to present Ms. Stewart as a witness at trial was a reasonable strategic decision. Moreover, we agree with the post-conviction court that nothing in Ms. Stewart's testimony at the evidentiary hearing was particularly impactful. Certainly, her testimony was not of the caliber that would suggest that the result of the proceeding would have been different had she testified at trial.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE